# GENERAL RAILWAY SIGNAL COMPANY v. THULLEN.

PATENTS; INTERFERENCE.

In an interference involving an improvement in inductive bonds employed to bridge the rails of an electric railway at each end of a block section thereof, where one of the parties amended his claims so as to insert claims copied from his adversary's patent, a decision of the Commissioner of Patents was *affirmed,* which held that the party so amending had no right to make certain of the claims so inserted, for the

reason that he had failed to disclose an induction bond with the turns of the windings interposed with each other as called for by such claims. (Distinguishing *Hopkins* v. *Newman*, 30 App. D. C. 402.)

No. 535.  Patent Appeals.  Submitted January 12, 1909.  Decided March 2, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. .    *Affirmed.*

The facts are stated in the opinion.

*Mr. Eugene C. Brown* and *Mr. Geo. H. Benjamin* for the appellant.

*Mr. Geo. E. Cruse, Mr. Thomas W. Bakewell,* and *Mr. Clarence P. Byrnes* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This appeal involves priority of invention between Fitzhugh Townshend and Louis H. Thullen, of an improvement in inductive bonds employed to bridge the rails of an electric railway at each end of a block section thereof.  The rails of such tracks are usually electrically continuous so that the propulsion current which flows from the motors may return to the source of generation.  In separating a track into block sections for track signaling, it is necessary to provide a means by which the signaling current of each section may be kept separate from the signaling current of adjacent blocks.

These insulating means would interrupt the electrical continuity of the track rails, and destroy their usefulness as return conductors for the propelling currents unless conductors are provided to bridge the insulated gaps and make a path for the return current of the motors, while choking back the alternating signaling current.

As stated in the appellant's brief:  "The operation of the

inductive bond depends upon the following well-known laws of electro-magnetism, *viz.:* That when an electric current traverses a conductor a magnetic effect is produced, called a magnetic field or magnetic flux,—and if the conductor be formed into a loop or turn, opposite magnetic poles will be manifested upon opposite sides of the loop. If the conductor be formed into a series of adjacent turns, or a coil, the magnetic effect will be cumulative, the separate loops or turns of the coil being mutually assisting, producing a strong magnetic field, or inductive effect. This is the effect when the electric current flows through one of the inductive bonds from end to end. The magnetism thus set up reacts upon the electric current to oppose or check its passage through the coil. In order that there may be no opposition to the passage of the car propulsion current through the coiled conductor of the inductive bonds, which is the object of the cases involved in this interference, it is necessary to prevent the formation of a magnetic field by the passage of the electric current. It has long been known that when two conductors are placed side by side throughout their length, and equal electric currents are sent through them in opposite directions, the magnetic effect produced in one conductor will nullify or destroy that produced in the other, so that no magnetic effect will be produced by the passage of the current in either conductor. When the two conductors are wound into a coil no magnetism will be manifested in the coil if equal and opposite currents are sent through the separate conductors so wound, provided they are wound side by side throughout their length."

The appellee says: "The inductive bonds of both the appellant and the appellee are designed to conduct the direct current from the car motors through their windings without appreciable magnetization of the cores and at the same time impede the passage of alternating signaling currents. An inductance bond (usually composed of a copper conductor wound around an iron core) has the property of conducting the direct current freely, and of impeding or choking back an alternating current; but when a direct current is passed through the coil of such inductance bond the iron core immediately be-

comes magnetized, and the magnetization tends to impair the power of the coil to impede the alternating signaling current. If two coils are placed at the core, and a part of the direct current is sent through one coil in one direction and the remainder through the other in the opposite direction, the magnetizing of the core will be largely neutralized. The degree of neutralization increases as the coils are brought into closer relation, and the greatest degree is obtained when the coils are interwoven or sandwiched."

Townshend originally applied for a patent on June 16, 1904, and Thullen on February 27, 1906. This last application passed into a patent granted December 18, 1906.

It seems that there had been a prior interference between the same parties, which, while referred to in the present proceedings, is not set out therein. Due to this, apparently, Townshend filed a division of his application on March 14, 1906. After various proceedings he amended his claims, inserting four copied from Thullen's patent, which had in the meantime issued. This interference was then declared in four counts embracing said claims. Thullen moved to dissolve the interference on the ground that Townshend had no right to make such claims.

The Primary Examiner held that Townshend had the right to make the claim of the first count, but not the right to make the other three. The four read as follows:

"1. In a system of automatic block signaling for electric railways and in combination with the traffic rails each divided into block sections by insulated joints, reactance bonds each bond comprising a core, a coil thereon connected across the trackway, and a conductor connecting the middle point of the coils on adjacent bonds.

"2. An inductive bond comprising a core having a plurality of legs or arms, a winding for said core all the turns of which are arranged on the same leg or arm of the core, said winding being in two parts, the turns of which are all in the same direction, and are interposed one with the other and an end of one part electrically connected to the end of the other

part to form a middle point of the winding, and a conductor leading from said middle point of the winding.

"3. An inductive bond comprising a core having a plurality of legs or arms, a winding for said core all the turns of which are in the same direction, on the same leg or arm of the core, and are interposed one with the other, and a conductor leading from the middle point of the winding.

"4. An inductive bond comprising a core having a plurality of legs or arms,. and a magnetic circuit of high reluctance, a winding for said core, all the turns of which are in the same direction, on the same leg or arm of the core, and are interposed one with the other, and a conductor leading from the middle point of the winding."

The grounds of his decision as regards the foregoing counts are, that among their elements is, "a winding for said core * * *, said winding being in two parts, * * * and are interposed one with the other;" and that "Townshend does not show or describe a winding in which the turns are interposed with each other." On appeal to the Examiners-in-Chief this decision was affirmed in an elaborate decision. On further appeal this decision was affirmed by the Commissioner. The necessary result is an award of priority to Thullen. All maintained the view of the Primary Examiner that Townshend had failed to disclose an induction bond with the turns of the windings "interposed with each other."

The claims having been copied from Thullen's patent, the familiar rule of construction was followed, namely, that they are to be understood in the light of the description in that patent.

The claims for windings. interposed one with the other follow the specific description of the patent. There is no such description in Townshend's application and drawings. He states, however, that it is well known that certain kinds of transformers have been in use with interposed windings, and contends that his reference to transformers informs all persons skilled in the art that the windings about the core of his device are intended to be made in the same manner, and is therefore sufficient to entitle him to make the claims of Thullen.

It is quite true that the specifications of a patent are addressed to persons skilled in the art, and that a disclosure which is sufficiently specific to enable such persons to readily construct and use the invention constitutes a compliance with the requirements of sec. 4888, Rev. Stat. U. S. Comp. Stat. 1901, p. 3383, as held in the case relied on by the appellant. *Hopkins* v. *Newman,* 30 App. D. C. 402, 410, and cases there cited.

In that case the invention was of a device by which a combination was to be effected in the operation of his typewriting machine with a separate adding machine. Newman's specifications and drawings showed a typewriting and an adding machine placed side by side, with a suitable means for adapting a single platen to co-operate with the printing mechanism of each machine. The printing mechanism of the typewriting machine was shown in the drawing and described together with the mechanism for actuating and controlling the movement of the platen. The drawing showed only the case and a few minor elements of the adding machine. The object described was merely to provide typewriting mechanism and means for combining the same with the adding mechanism, and stated that it was illustrated in connection with an adding machine known as the "registering accountant," that has been patented to Burroughs. Expert witnesses testified that they recognized the Burroughs machine in the drawing, and that from the description and drawing the invention could be readily constructed by anyone skilled in the art. Newman did not undertake to make any change or improvement in the well-known adding machine. His invention began with it, and consisted in combining therewith his typewriting machine, by making the specified change in the carriage whereby a single platen is made to co-operate with the separate printing mechanism of the two machines.

It was held that, in order to make the claims, it was not obligatory upon Newman to completely describe and illustrate the mechanism of the adding machine; the want of specification of its elements and functions being fully supplied and rendered certain by the reference. The other cases cited go no farther than that.

The conditions of Townshend's case are quite different. No one of the several kinds of transformers is a part of the device or combination of the issue. The reference to transformers in general has nothing to do with their windings. While it is said the construction is in many respects like transformers— no particular kind of which is mentioned—these respects are then specifically limited to their methods of insulation, which, it is said, are not illustrated because not novel and no claim is made for them.

In view of this reference to transformers generally, and the limited nature of the reference to their insulation, we must hold that the description is insufficient for the purpose contended.

We concur in the following extract from the Commissioner's decision:

"If the illustration of the windings shown by Townshend is considered as merely diagramatic, and the Thullen arrangement is old in the art, as contended by appellant, this fact does not warrant Townshend in substituting said arrangement for his conventional illustration and claiming it in his application. There may be several ways of arranging the windings in the prior art, any one of which Townshend might appropriate if his contention is correct. It is common to illustrate a battery diagramatically, for example, but such illustration would not support claims for any particular variety of battery. *Ex parte Scott,* 114 Off Gaz. 260.

"On the other hand, if the position apparently taken by the Examiner, namely, that Townshend discloses the specific construction of his bond, be accepted, it is clear that Thullen shows another species of bond. The Primary Examiner held count one of the issue generic to both species. The remaining counts are believed to be specific to Thullen's construction, for the reason stated above. The fact that Thullen's structure may be the equivalent of that of appellant does not give Townshend the right to make the specific claims.

"It is not necessary to determine which of the above interpretations of Townshend's disclosure is correct, since under

neither interpretation has he the right to make the appealed claims."

We find no error in the decision, and it will therefore be affirmed. The clerk will certify this decision to the Commissioner of Patents as the law directs.　　　　　*Affirmed.*